UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CICERO-BERWYN ELKS LODGE No. 1510, DES | ) | |
| PLAINES ELKS LODGE No. 1526, QUINCY ELKS | ) | |
| LODGE No. 100 OF THE BENEVOLENT AND | ) | 12 C 10257 |
| PROTECTIVE ORDER OF ELKS, MT. CARMEL | ) | |
| LODGE No. 715, B.P.O.E. DEKALB ELKS No. 765, | ) | Judge Feinerman |
| DIXON LODGE No. 779, B.P.O.E. ELKS LODGE No. | ) | |
| 914, B.P.O.E. PONTIAC LODGE No. 1019, | ) | |
| ROBINSON ELKS LODGE No. 1188, CARMI ELKS | ) | |
| LODGE No. 1652, FLORA ELKS LODGE No. 1659, | ) | |
| SALEM ELKS LODGE No. 1678, and OGLESBY | ) | |
| ELKS B.P.O.E. 2360, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PHILADELPHIA INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, thirteen local lodges of the Benevolent and Protective Order of Elks, filed this

suit in the Circuit Court of Cook County, Illinois, on behalf of themselves and a proposed class

of approximately 700 Elks lodges against their former insurer, Philadelphia Insurance Company.

Doc. 1-1. The complaint alleges that Philadelphia Insurance overcharged the lodges for

insurance contracts that it issued to them. Philadelphia Insurance timely removed the suit to

federal court, grounding federal jurisdiction on the diversity statute, 28 U.S.C. § 1332(a). Doc. 1

at ¶ 9. Plaintiffs did not challenge the removal at that time. Philadelphia Insurance moved to

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), Doc. 13, and Plaintiffs

responded by filing an amended complaint, Doc. 19. The amended complaint agrees with

Philadelphia Insurance that this suit falls within the federal courts' diversity jurisdiction. *Id.* at ¶ 16 ("[t]he jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)").

The statute governing post-removal procedure states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Although the parties had agreed that the case had been properly removed, a federal court has an independent responsibility to ensure that it has subject matter jurisdiction. *See Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011). At a status hearing held on February 26, 2013, the court *sua sponte* questioned whether the case satisfied the amount-in-controversy requirement of § 1332(a). Doc. 26. The parties filed briefs in response to the court's inquiry, with Plaintiffs asserting that federal jurisdiction does not lie and that the case should be remanded to state court, Doc. 27, and Philadelphia Insurance maintaining that jurisdiction does lie under § 1332(a), Doc. 28.

It is undisputed that the parties are completely diverse. The named plaintiffs are Illinois nonprofit corporations based in Illinois, Doc. 1 at ¶ 4, and Philadelphia Insurance is a Pennsylvania corporation with its principal place of business in Pennsylvania, *id.* at ¶ 6. Although the proposed class includes lodges that may also be Pennsylvania citizens for diversity purposes, Doc. 1-1 at ¶ 20; Doc. 27 at 2, the applicable rule holds that "nonnamed class members cannot defeat complete diversity." *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002). It also is undisputed that the only potential basis for federal jurisdiction is § 1332(a); neither party has suggested that this suit falls within the federal question jurisdiction under § 1331, and Philadelphia Insurance—the only party now asserting federal jurisdiction—disclaims reliance on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Doc. 28 at 2 n.2. Philadelphia Insurance is right to do so, for CAFA provides federal jurisdiction only over class actions in

which the total amount in controversy, aggregating the claims of all class members, exceeds

$5,000,000, 28 U.S.C. §§ 1332(d)(2), (d)(6), and the complaint and amended complaint allege

aggregate damages for the whole proposed class of only around $750,000, Doc. 1-1 at ¶ 19; Doc.

19 at ¶ 33. There is no indication, and Philadelphia Insurance does not maintain, that the

$750,000 figure is an artificial ceiling that must be ignored for purposes of determining

jurisdiction under CAFA, as in *Standard Fire Insurance Co. v. Knowles*, 568 U.S. ___ (2013).

So the court will focus on § 1332(a), and since there is complete diversity, the only

question is whether the $75,000 amount-in-controversy requirement is met. By contrast to

CAFA, § 1332(a)'s amount-in-controversy requirement cannot be met by aggregating the claims

of multiple plaintiffs; there must be at least one individual plaintiff whose claims surpass the

$75,000 threshold, and if there is such a plaintiff, the court will have supplemental jurisdiction

over other plaintiffs whose claims do not meet the threshold so long as they arise out of the same

Article III case or controversy. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546,

549 (2005) ("We hold that, where the other elements of jurisdiction are present and at least one

named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367

does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III

case or controversy, even if those claims are for less than the jurisdictional amount specified in

the statute setting forth the requirements for diversity jurisdiction."); *Travelers Prop. Cas. v.*

*Good*, 689 F.3d 714, 717-18 (7th Cir. 2012) ("The general rule is that the claims of multiple

litigants cannot be aggregated to reach the jurisdictional amount in controversy."). The key

question therefore is whether any individual named plaintiff's claim meets the $75,000 threshold.

"If the matter is uncontested, federal courts will accept a plaintiff's allegation of a

sufficient amount in controversy unless it appears to a legal certainty that the claim is really for

less than the jurisdictional amount.  If the defendant challenges the allegation … the plaintiff

must support its assertion with 'competent proof,' which means 'proof to a reasonable

probability that jurisdiction exists.'"  *Target Market Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139,

1141-42 (7th Cir. 1998) (citations and some internal quotation marks omitted).  Here, the usual

roles are reversed: the defendant has brought the case to federal court through removal while the

plaintiff is challenging federal jurisdiction.  "[T]he burden rests on the defendant in a removal

action to prove that the amount in controversy is sufficient."  *Wilson v. Republic Iron & Steel

Co.*, 257 U.S. 92, 97 (1921).

The defendant's burden is to provide an estimate of the amount in controversy and, if the

plaintiff challenges that estimate, the defendant must submit argument, and perhaps evidence,

from which the court can conclude that the plaintiff might possibly recover the requisite amount.

*See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006).  The Seventh

Circuit has "suggested several ways in which this may be done—by contentions interrogatories

or admissions in state court; by calculation from the complaint's allegations …; by reference to

the plaintiff's informal estimates or settlement demands …; or by introducing evidence, in the

form of affidavits from the defendant's employees or experts, about how much it would cost to

satisfy the plaintiff's demands."  *Id*. at 541.  "Once the estimate [of the amount in controversy]

has been made—and contested factual allegations that support the estimate have been established

in a hearing under Rule 12(b)(1) by admissible evidence (that's what 'competent' proof

means)—then … the case stays in federal court unless it is legally certain that the controversy is

worth less than the jurisdictional minimum."  *Id*. at 542.

These avenues were open to Philadelphia Insurance, and no doubt it was aware of them,

for it cited and quoted *Meridian* in its jurisdictional brief.  Doc. 28 at 2, 4.  But Philadelphia

Insurance chose in its brief to look only to the allegations in the complaint to support its view

that the amount-in-controversy requirement is satisfied.  *Id*. at 2 ("the court should look *only to*

*the pleadings themselves*").  The complaint makes clear that no individual named plaintiff has

claims that could possibly win it a recovery in excess of the $75,000 threshold.

The complaint alleges that the lodges had insurance policies from Philadelphia Insurance

and that "Philadelphia Insurance Company billed for and received premium payments on a basis

contrary to that agreed upon by" Philadelphia Insurance and the Grand Lodge in Chicago—that

is, the complaint alleges that Philadelphia Insurance overcharged each lodge, and it is for those

overcharges that the lodges seek to recover.  Doc. 1-1 at ¶ 17; Doc. 19 at ¶ 27.  The complaint

further alleges "[t]hat collectively, the damages sustained by the Lodges exceed $750,000, but

individually, is in the range of hundreds to thousands of dollars" per lodge.  Doc. 1-1 at ¶ 19;

Doc. 19 at ¶ 33.  The number of "affected Elks Lodge[s]" sought to be included within the

proposed class is "nearly 700," Doc. 1-1 at ¶ 14; *see also* Doc. 19 at ¶ 35 ("approximately 700"),

and at the February 26 hearing, Plaintiffs' counsel explained that the "collective" damages figure

of $750,000 is the estimated figure for all 700 or so lodges in the class, not just for the thirteen

named plaintiffs.  That is consistent with the complaint's allegation that the damages to each

individual lodge are "in the range of hundreds to thousands of dollars," since collective damages

of $750,000 for 700 lodges would imply average damages per lodge of $1071, and if the actual

damages to each individual lodge are in that ballpark then they are indeed "in the range of

hundreds to thousands of dollars."

Philadelphia Insurance argues that if the damages to each lodge are "in the range of

hundreds to thousands of dollars," then the complaint does not exclude, to a legal certainty, the

possibility that one named plaintiff suffered over $75,000 in damages.  The court rejects this

argument, for it is plain from context and from standard usage that, although the phrase "hundreds to thousands of dollars" is somewhat ambiguous, it does not come close to the $75,000 jurisdictional threshold. It is of course mathematically possible that with 700 lodges and collective damages of $750,000, the individual damages to one lodge could exceed $75,000; perhaps the damages to one lodge is $100,000 and the damages to the others are clustered around $900 each. But if the damages to one lodge exceeded $75,000, it would badly strain English usage to say, as both the complaint does, that the damages "individually" are "in the range of hundreds to thousands of dollars."

No competent user of the English language would speak of $75,000 as "in the range of hundreds to thousands of dollars." To do so would not be *literally* inaccurate—75,000 is seventy-five thousands or 750 hundreds—but nor would it be literally inaccurate to say that the Moon is "hundreds to thousands of miles" from the Earth—it is around 239 thousands or 2389 hundreds of miles away, on average—or that a law firm associate with an annual salary of $75,000 makes "hundreds to thousands of dollars" per year. As these two examples illustrate, Philadelphia Insurance's reading of the phrase "in the range of hundreds to thousands of dollars" is so strained and unidiomatic as to be preposterous despite its literal correctness. *Cf. MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 228 (1994) ("'Modify,' in our view, connotes moderate change. It might be good English to say that the French Revolution 'modified' the status of the French nobility—but only because there is a figure of speech called understatement and a literary device known as sarcasm."); *Johnson v. United States*, 529 U.S. 694, 718 (2000) (Scalia, J., dissenting) ("Of course the acid test of whether a word can reasonably bear a particular meaning is whether you could use the word in that sense at a cocktail party without having people look at you funny."). When an attorney refers to damages of "hundreds to

thousands of dollars," it can be said "to a legal certainty" that the stated range does not include or even approach the $75,000 threshold. The implied high end of the range is at most ten thousand; it surely is not more than $25,000, let alone $75,000.

Although the dollar figures in the complaints do not *establish* federal jurisdiction, they could not *defeat* federal if there were other grounds for finding the amount-in-controversy requirement satisfied here. The "hundreds to thousands of dollars" language in the complaint is not a binding stipulation that no individual named plaintiff will recover an amount exceeding that range. *Cf. St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."). Perhaps one of the named plaintiffs was extremely large and thus subjected to much higher insurance premiums; this might have resulted in the lodge paying alleged overcharges two or so orders of magnitude greater than the overcharges allegedly paid by average-sized lodges. That possibility is not inconceivable, but the complaints say nothing to suggest that any of the named plaintiffs is such an outlier. If one named plaintiff were such an outlier, then Philadelphia Insurance, which issued the policies and knows how much they cost— and which, as the proponent of federal jurisdiction, had the burden of bring such facts to the court's attention—should have submitted evidence to that effect. But as already mentioned, Philadelphia Insurance makes no attempt to back up its arguments with evidence, and in fact affirmatively waived any grounds for jurisdiction other than the complaints themselves. Doc. 28 at 2 ("the court should look *only to the pleadings themselves*").

Philadelphia Insurance emphasizes that the damages claimed by the lodges include "10 years of compounding interest and attorneys' fees." Doc. 1-1 at p. 6; Doc. 19 at p. 11. The

$75,000 threshold of § 1332(a) is "exclusive of interest and costs," but there is an exception: "[W]hen such expenses are sought as part of an underlying claim, rather than pursuant to a separate post-judgment right to 'costs' or 'fees' incurred in the litigation, they are considered part of the amount in controversy." *El v. AmeriCredit Fin. Servs., Inc.*, __ F.3d __, 2013 WL 1150210, at *4 (7th Cir. Mar. 20, 2013) (collecting cases). But even compound interest at an unrealistically high rate could not change a claim for a few thousand dollars into one for more than $75,000 in the eight years between 2004, when the insurance policies went into effect, and 2012, when this suit was filed. Even continuously compounding interest at a 15% interest rate on principal of $10,000 (the absolute high end of "hundreds to thousands of dollars") would only come to $44,816.89 ($10,000 x e$^{10 \times 0.15}$ = $44,816.89) after ten years. *See El*, 2013 WL 1150210, at *4 (holding that the value of the claim fell short of $75,000 to a legal certainty where the claim was for "only $11,000 plus prejudgment interest").

As for attorney fees, because the existence of federal jurisdiction must be judged from the time of removal, "only attorneys' fees incurred up to the time of removal could be included in the amount in controversy requirement." *ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011); *see also Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998) ("legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed"). There is no suggestion in the complaints or in Philadelphia Insurance's brief that such pre-suit attorney fees are at issue here; this is not, for instance, a suit by an insured claiming that his insurer wrongly refused to pay for his defense in an underlying suit, in which case the cost of that defense would count towards the amount in controversy. *See Grinnell Mut. Reins. Co. v. Shierk*, 121 F.3d 1114, 1117 n.2 (7th Cir. 1997); *Addus Healthcare, Inc. v. Auto-Owners Ins. Co.*, 2011 WL 5142988, at

*3 (N.D. Ill. Oct. 28, 2011). Nor is it plausible that the fees accrued by each or any of the thirteen named plaintiffs during the several weeks between the November filing of the original complaint and the December removal (the time at which jurisdiction must be determined) could come close to the requisite amount. In any event, Philadelphia Insurance has forfeited its argument about fees by failing to develop the argument or to cite relevant authority; all it says is that "Plaintiffs seek attorneys' fees, interest (compounded over ten years), and 'other relief.'" Doc. 28 at 5. As stated above, Philadelphia Insurance has the burden of establishing federal jurisdiction, and such a perfunctory and undeveloped argument does not meet that burden. *See Travelers Prop. Cas.*, 689 F.3d at 718 ("[t]he court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists"); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (internal quotation marks omitted).

Finally, Philadelphia Insurance observes that before the court expressed its doubts about jurisdiction at the February 26 hearing, the named plaintiffs had asserted in the amended complaint that jurisdiction was present. Doc. 28 at 4 ("Surprisingly, in light of Plaintiffs' current contention that there is clearly no federal subject matter jurisdiction, in their Amended Complaint, the Plaintiffs *specifically invoke federal diversity jurisdiction*, and acknowledge that section 1332(a) provides jurisdiction where the matter in controversy exceeds the sum or value of $75,000."). That is true but irrelevant. "Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012).

The court therefore concludes that it lacks subject matter jurisdiction and must remand the case to Illinois state court. Before concluding, the court must resolve the parties' dueling requests for attorney fees and costs. Plaintiffs request fees pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has held that "the standard for awarding fees [under § 1447(c)] should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Plaintiffs' suggestion that fees and costs are justified here is meritless. After all, Plaintiffs failed to object to the removal until after the court raised its concerns at the February 26 hearing, and in their amended complaint they even said that they too believed there was federal jurisdiction under § 1332(a). Doc. 19 at 4. Plaintiffs cannot benefit from a determination that the removal was objectively unreasonable when they themselves asserted that it was proper. In any event, the removal was not objectively unreasonable because the jurisdictional question, though ultimately neither close nor difficult, was not without complexity and nuance. *See Minerals Dev. & Supply Co. v. Hunton & Williams LLP*, 488 F. App'x 153, 154 (7th Cir. 2012) (affirming the district court's denial of fees and costs under § 1447(c) where the plaintiff initially "had accepted the removal's propriety" and therefore was "poorly situated to contend that the lack of jurisdiction [was] so apparent that any assertion of federal jurisdiction must be unreasonable"); *Micrometl Corp. v. Tranzact Techs., Inc.*, 656 F.3d 467, 472 (7th Cir. 2011) ("We have no trouble concluding that the district court did not abuse its discretion by considering Tranzact's delay in seeking remand as part of its decision not to award fees and costs pursuant to § 1447(c).").

Apparently in retribution for Plaintiffs' request, Philadelphia Insurance contends that, " if anything, [Plaintiffs] should be ordered to show cause why they should not pay [Philadelphia Insurance's] attorneys' fees." Doc. 28 at 7. To support its submission, Philadelphia Insurance says: "Assuming Plaintiffs' statements in their brief on jurisdiction are correct, they have also improperly invoked federal jurisdiction in their Amended Complaint." *Id*. at 9; *see also id*. at 1-2 (same); *id*. at 10 ("[I]f Plaintiffs are to be believed, they allowed [Philadelphia Insurance] to file not one, but two motions to dismiss without breathing a word that their damages model did not meet jurisdictional thresholds."). But all that Plaintiffs did in the amended complaint was to agree with Philadelphia Insurance, which had invoked federal jurisdiction by removing this case! The court will not order Plaintiffs to pay Philadelphia Insurance's attorney fees for making a mistake first made by Philadelphia Insurance.

This case is remanded to the Circuit Court of Cook County, Illinois. Both sides' requests for fees and costs are denied.

April 4, 2013

_____
United States District Judge